UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROBIN AVIV,

                        Plaintiff,                       18-cv-5088 (PKC)

      -against-                              OPINION
                                                                     AND ORDER

CHRISTOPHER BRAINARD, et al.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

       These are the Court's findings of fact and conclusions of law after a hearing on September 24, 2018 on an Order to Show Cause why a finding of civil contempt ought not be entered against Searcy Denney Scarola Barnhart & Shipley, P.A., ("Searcy Denney"), a law firm based in Florida, and David Vitale, Jr., one of its associates, neither of which are parties to the pending proceeding.

       1.     On May 11, 2018, the New York Supreme Court entered a Temporary Restraining Order ("TRO"), which provided, in relevant part, that "each defendant and all . . . agents, attorneys, . . . and all other persons acting on behalf of or in concert with any said defendant(s) . . . are hereby temporarily restrained from using, accessing, transferring, . . . or otherwise conveying in any way shape or form any asset(s)[,] . . . regardless of whether such money or property be in the possession, custody, control or name(s) of [Christopher Brainard][,] . . . in which Brainard . . . now has or had at any time after 2010 any legal, equitable or beneficial interest." (Doc. 56-3 at 5–6).

       2.     Under New York law, "nonparties 'may be bound by an injunction [or temporary restraining order] if they have knowledge of it, provided they are servants or agents of

the defendants, or act in collusion or combination with them.'" Ricatto v. Ricatto, 772 N.Y.S.2d 705, 707 (2d Dep't 2004) (quoting Rigas v. Livingston, 178 N.Y. 20, 24 (1904)). Knowledge of the injunction or temporary restraining order may be established even if the order was not served on the nonparty. Power Auth. v. Moeller, 395 N.Y.S.2d 497, 498 (3d Dep't 1977); see also El-Dehdan v. El-Dehdan, 26 N.Y.3d 19, 29 (2015); N. Fork Bank v. Adventurers, Inc., 675 N.Y.S.2d 532, 262 (1st Dep't 1998).

3. Federal law governing the applicability of injunctions and temporary restraining orders, codified in Rule 65(d), Fed. R. Civ. P., is substantially identical to New York law. The Second Circuit, in assessing Rule 65(d), has held that a "district court need not have personal jurisdiction over nonparties to issue a preliminary injunction requiring a party before it to refrain from moving assets during the pendency of the proceedings." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 130 (2d Cir. 2014). This is so because "such injunctions do not directly restrain the conduct of nonparties" and instead function only to "provide these nonparties with notice that 'they could become liable . . . if they assist . . . in violating the district court's orders.'" Id. (second alteration in original) (quoting NML Capital, Ltd. v. Republic of Argentina, 727 F.3d 230, 243 (2d Cir. 2013)). The New York Supreme Court did not need personal jurisdiction over nonparties Vitale or Searcy Denney to enter a valid temporary restraining order against defendants, including Christopher Brainard.

4. Courts routinely exercise personal jurisdiction in contempt proceedings over nonparties on the basis that nonparties may not assist, aid, or abet a violation of an order that directly binds a party, such as Brainard, over whom the court has personal jurisdiction. See Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 971 (11th Cir. 2012) ("[T]he courts . . . generally agree that th[e] sanction power extends to a person outside the territorial limits of the court that

issued the injunctive order, provided that the person had actual notice of the order and acted in concert with the party explicitly enjoined."); ClearOne Commc'ns, Inc. v. Bowers, 651 F.3d 1200, 1215–16 (10th Cir. 2011) (holding "that a district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order"); SEC v. Homa, 514 F.3d 661, 673 (7th Cir. 2008) ("Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum." (quoting Waffenschmidt v. MacKay, 763 F.2d 711, 714 (5th Cir. 1985))); United States v. Hochschild, 977 F.2d 208, 212 (6th Cir. 1992) (observing that "courts more often have held that [nonparty] officers or employees of corporate and business entities [that are parties] are subject to in personam jurisdiction for purposes of contempt if they have notice of the injunction and its contents"); Waffenschmidt, 763 F.2d at 718 ("By actively aiding and abetting [a party], [two nonparties] placed themselves within the personal jurisdiction of the district court.").

5. The basis for exercising personal jurisdiction over the nonparty is "that intentionally violating an . . . injunction is conduct 'designed to have purpose and effect in the forum,' and that the authority to force compliance 'is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.'" Gucci, 768 F.3d at 137 (quoting Homa, 514 F.3d at 675).

6. The TRO, as noted, restrained "all . . . agents, attorneys, . . . and all other persons acting on behalf of or in concert with [Christopher Brainard]." (Doc. 56-3 at 5). Searcy Denney was an agent of, attorney for, and acting on behalf of Christopher Brainard

7. Searcy Denney, at the hearing on September 24, 2018, acknowledged that there is "no dispute . . . that [it] had notice of the temporary restraining order prior to the transfer of funds." (Sept. 24, 2018 Hearing Tr. at 14:14–19). Searcy Denney stated in its briefing in response to the order to show cause that it researched whether it was bound by the TRO, concluded that it was not, and thereafter released the funds. (Doc. 95 at 12).

8. As an attorney, agent, and entity acting on behalf of Brainard, and with knowledge of the TRO, Searcy Denney could not aid, assist, act in concert with, or otherwise participate in conduct that would place Brainard in violation of the TRO. The TRO restrained Brainard "from using, accessing, transferring, . . . or otherwise conveying in any way shape or form any asset(s)[,] . . . regardless of whether such money or property be in the possession, custody, control or name(s) of [Christopher Brainard][,] . . . in which Brainard . . . now has or had at any time after 2010 any legal, equitable or beneficial interest." (Doc. 56-3 at 5–6). Searcy Denney, Brainard's agent and attorney, admitted at the hearing that it transferred the funds at issue "[f]or [Brainard's] personal use and expenses." (Sept. 24, 2018 Hearing Tr. at 14:7–10). This is a "way[,] shape[,] or form" of conveying and transferring an asset. (Doc. 56-3 at 6). Moreover, Searcy Denney aided and abetted Brainard in "accessing" these funds by transferring the funds from Searcy Denney's trust account to Brainard. (Doc. 56-3 at 5).

9. This Court has personal jurisdiction over nonparty Searcy Denney in connection with the foregoing actions.

10. There is no evidence, however, that Vitale took any action that violated the TRO, eliminating disobedience of the TRO as a basis for personal jurisdiction. There is no other basis to exercise personal jurisdiction over Vitale and hence no basis to hold him in contempt.

11. "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)). "It need not be established that the violation was willful." Id.

12. The TRO was clear and unambiguous. "A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" King, 65 F.3d at 1058 (citation omitted) (quoting Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988); Drywall Tapers & Pointers of Greater New York, Local 1974 v. Local 530 of Operative Plasterers, 889 F.2d 389, 395 (2d Cir. 1989)). The TRO clearly and unambiguously enjoined Brainard and all of his "agents" and "attorneys" from transferring or conveying assets "in any way[,] shape[,] or form." (Doc. 56-3 at 5–6). It also clearly and unambiguously prohibited "all . . . persons acting on behalf of or in concert with [Christopher Brainard]" from transferring or conveying assets "in any way[,] shape[,] or form." (Doc. 56-3 at 5–6).

13. Searcy Denney's disobedience of the TRO has been proven by clear and convincing evidence. Searcy Denney admitted at the hearing on September 24, 2014 that it transferred the funds at issue to Brainard "[f]or [Brainard's] personal use and expenses." (Sept. 24, 2018 Hearing Tr. at 14:7–10). This is a "way[,] shape[,] or form" of conveying and transferring an asset. (Doc. 56-3 at 6). Searcy Denney was acting as on behalf of Brainard and as Brainard's agent and attorney, and, by transferring the assets, it aided and abetted Brainard in

"accessing" those assets, which he promptly expended. (See Doc. 90-1).

14. Searcy Denney made no reasonable attempt to comply with the TRO.

15. The Court finds that Searcy Denney aided, assisted, and participated with Brainard in a violation of the TRO and is in civil contempt.

16. "It is well settled . . . that civil contempt proceedings must be 'remedial and compensatory, and not punitive . . . .'" Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989) (quoting Sunbeam Corp. v. Golden Rule Appliance Co., 252 F.2d 467, 469 (2d Cir. 1958)).

17. Within seven days of this Opinion and Order, Searcy Denney shall deposit into the Registry of this Court $90,238.50, the amount transferred in violation of the TRO.

18. If Searcy Denney does not deposit $90,238.50 into the Registry of this Court within seven days of this Opinion and Order, a fine of $3,000 will be imposed, without further proceedings or orders, by operation of this Opinion and Order. For every seven days that Searcy Denney fails to comply with this Opinion and Order, the fine shall double. Searcy Denney shall pay any incurred fine into the Registry of this Court.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
October 11, 2018